UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| OTIS ELEVATOR COMPANY, : | |
| : | CIVIL ACTION NO. 3:03cv972 (JCH) |
| *Plaintiff*, : | |
| : | |
| VS. : | |
| : | |
| GE FANUC AUTOMATION CORPORATION, : | |
| : | |
| *Defendant*. : | FEBRUARY 19, 2004 |

**PROPOSED FINDINGS OF FACT**

1.     On or about February 23, 2000, Mr. Gaboury of Otis Elevator Company ("Otis") spoke with William Zitelli of GE Fanuc Automation Corporation ("GE Fanuc") regarding programming services in support of the APM project at the Minneapolis/St. Paul International Airport.  *See* Deposition of William Zitelli ("Zitelli depo.") at 70.

2.     On or about February 23, 2000, Mr. Gaboury informed Mr. Zitelli that any work performed by a GE Fanuc employee would have to be performed pursuant to an Otis purchase order.  Mr. Gaboury also told Mr. Zitelli that Otis would not pay for any labor unless GE Fanuc issued a written invoice listing, among other things, the number of the relevant purchase order. *See* Zitelli depo. at 70-71; *see* Deposition of Robert Gaboury ("Gaboury depo.") at 56-57.

3.     On or about February 23, 2000, Mr. Zitelli and Mr. Gaboury discussed an arrangement under which GE Fanuc would provide programming services to Otis by supplying a GE Fanuc employee named Mike Delana.  They also agreed that Mr. Delana's hourly rate would be $76.67 and that he would work for a total number of 480 hours.  *See* Zitelli depo. at 71-73.

4.     On or about February 23, 2000, Mr. Gaboury informed Mr. Zitelli that it would take a few days for a hard copy of the necessary purchase order to print out, but because GE

Fanuc required a purchase order before it would assign Mike Delana (*see* Zitelli depo. at 62-64; *see* Gaboury depo. at 87), that he would fax a computer print out of the screen that contained some of the specific information for the APM project, including the purchase order number. *See* Zitelli depo. at 72.

5. On or about February 24, 2000, Mr. Gaboury faxed to Mr. Zitelli the computer print out of the screen that contained some of the specific information for the APM project, including the purchase order number of KO. 003346, the hourly rate of $76.67 and the total number of hours to be worked. *See* Zitelli depo. at 59, 63-65; *see* Gaboury depo. at 82-87.

6. On February 29, 2000, Mr. Gaboury mailed to Mr. Zitelli an original Purchase Order KO. 003346. Purchase Order KO. 003346 contains a legend on the bottom of the first page stating "**TERMS AND CONDITIONS ON BACK**." The reverse side of Purchase Order KO. 003346 contains various terms and conditions, some of which Mr. Gaboury had discussed with Mr. Zitelli during our conversation on February 23, 2000. *See* Zitelli depo. at 67-69; *see* Gaboury depo. at 55, 62.

7. At no time did Mr. Zitelli or anyone from GE Fanuc advise Mr. Gaboury that GE Fanuc objected to any of the terms and conditions of Purchase Order KO. 003346. *See* Zitelli depo. at 69.

8. In approximately April 2000, Mr. Zitelli and Mr. Gaboury agreed that, because Otis was dissatisfied with the work provided by Mr. Delana, GE Fanuc would not bill Otis for all of the time logged by Mr. Delana and that GE Fanuc would supply to Otis a different employee, Jeffrey Miller, to complete the 480 hours of work under Purchase Order KO. 003346. Mr. Gaboury revised Purchase Order KO. 003346 to reflect these changes. *See* Gaboury depo. at 93-94; *see* Zitelli depo. at 72-73.

9.      On or about May 22, 2000, Mr. Gaboury mailed a copy of the revised Purchase Order KO. 003346 to Mr. Zitelli.  The revised Purchase Order KO. 003346 contains the same legend on the bottom of the first page and the same terms and conditions on the reverse side as the original purchase order.  At no time did Mr. Zitelli or anyone from GE Fanuc advise Mr. Gaboury that GE Fanuc objected to any of the terms and conditions of the revised Purchase Order KO. 003346.  *See* Zitelli depo. at 69.

10.     GE Fanuc submitted written invoices for labor performed under the revised purchase order which specifically identified Purchase Order KO. 003346 by number.  *See* Zitelli depo. at 72.

11.     In approximately June 2000, Mr. Zitelli and Mr. Gaboury agreed that GE Fanuc would provide additional labor by Mr. Miller at an hourly rate of $105.00 and that Otis would pay a set amount for Mr. Miller's travel and lodging.  Mr. Gaboury supplemented Purchase Order KO. 003346 with these terms and mailed the supplemented Purchase Order KO. 003346 to Mr. Zitelli in June 2000.  *See* Zitelli depo. at 81-82.

12.     The supplemented Purchase Order KO. 003346 contained the same legend on the bottom of the first page and the same terms and conditions on the reverse side as the original purchase order.  At no time did Mr. Zitelli or anyone from GE Fanuc advise Mr. Gaboury that GE Fanuc objected to any of the terms and conditions of the supplemented Purchase Order KO. 003346.  *See* Zitelli depo. at 69.

13.     Between June 2000 and October 2001, there were several supplements to Purchase Order KO. 003346 reflecting the parties' agreements regarding additional increments of Mr. Miller's programming services.  *See* Zitelli depo. at 36-37.   On each occasion, Mr. Gaboury spoke with Mr. Zitelli in advance of preparing the supplement, obtained his agreement

that Otis would supplement the purchase order, and then mailed the supplement to Mr. Zitelli. *See* Zitelli depo. at 37. The supplements to Purchase Order KO. 003346 include an entry showing the time period covered. The supplements do not refer to this entry as limiting the term or duration of the supplement, and they did not serve that purpose. These entries were included to provide an estimate for planning purposes. The duration of a supplement was determined by one of two things: either the parties' agreement to change the items covered (the price or quantity of labor specified or the allowance for travel and living expense) or the fulfillment of the amount of labor specified in the supplement. As long as some quantity of labor remained on the existing version, GE Fanuc would continue to supply Mr. Miller's services without the parties supplementing Purchase Order KO. 003346, regardless of whether the time period estimated in the current version of Purchase Order KO. 003346 had expired. *See* Gaboury depo. at 113-14; *see* Zitelli depo. at 86-87.

      14.    In December of 2001, Mr. Gaboury received updated information from the Otis electrical engineering manager working on the APM project as to the estimated length of time that Otis would need Mr. Miller's services starting in January 2002. Accordingly, on or about December 6, 2001, Mr. Gaboury called Mr. Zitelli and suggested that they replace Purchase Order KO. 003346 and start a new purchase order for the new year, 2002. *See* Zitelli depo. at 38. Mr. Gaboury also told Mr. Zitelli that Otis wanted to order 1040 hours of straight time and 500 hours of overtime in the new year. Mr. Zitelli agreed with Mr. Gaboury's suggestion, and Mr. Gaboury prepared a new purchase order, Purchase Order KO. 004783. As Mr. Zitelli and Mr. Gaboury discussed, Purchase Order KO. 004783 superceded the ninth and final supplement to Purchase Order KO. 003346 effective January 2, 2002. *See* Zitelli depo. at 41.

15. As in the supplements to Purchase Order KO. 003346, Purchase Order KO. 004783 included an estimate of the term of Mr. Miller's services. Since Mr. Gaboury understood that Otis would need Mr. Miller's services until at least June 30, 2002, he listed the estimated service length as running from January 2, 2002 to June 30, 2002, and set June 30, 2002 as the "due date." The purchase order does not indicate that this estimate limited the duration of the parties' agreement, nor did Mr. Gaboury ever discuss with Mr. Zitelli that this or any other estimate of time would serve that function. *See* Zitelli depo. at 39. In late 2001 or in 2002, Mr. Gaboury did discuss with Mr. Zitelli the fact that, as the project neared completion, Otis would reach the point where it no longer needed Mr. Miller's services. *See* Zitelli depo. at 38-39. Mr. Zitelli asked that Otis try give advance notice of approximately thirty days so that GE Fanuc could arrange for Mr. Miller's next project. *See* Zitelli depo. at 38-39.

16. On or about December 7, 2001, Mr. Gaboury mailed Purchase Order KO. 004783 to Mr. Zitelli. Purchase Order KO. 004783 contains the same legend on the bottom of the first page and the same terms and conditions on the reverse side as Purchase Order KO. 003346, its revision and supplements. At no time did Mr. Zitelli or anyone from GE Fanuc advise Mr. Gaboury that GE Fanuc objected to any of the terms and conditions of Purchase Order KO. 004783. *See* Zitelli depo. at 69.

17. Otis continued work on the project after June 30, 2002, with assistance from GE Fanuc. Since GE Fanuc had not supplied the quantity of labor specified in Purchase Order KO. 004783 as of June 30, 2002, the parties continued under that purchase order without issuing a supplement or new purchase order. *See* Gaboury depo. at 115.

PLAINTIFF
OTIS ELEVATOR COMPANY

_____
Dan