FILED

2004 FEB 19 P 3:38

US DIST...

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| OTIS ELEVATOR COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>GE FANUC AUTOMATION CORPORATION,<br><br>Defendant. | CIVIL ACTION NO. 3:03CV972 (JCH)<br><br><br><br><br><br><br><br><br>FEBRUARY 19, 2004 |

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT**
**OF OBJECTION TO PETITION TO COMPEL ARBITRATION**

Defendant GE Fanuc Automation Corporation ("GE Fanuc") hereby submits the following Supplemental Memorandum in Support of its Objection to Otis's Petition to Compel Arbitration.[1] On or about May 30, 2003, Plaintiff Otis Elevator Company ("Otis") filed its Memorandum of Law in Support of Petition to Compel Arbitration. On July 25, 2003, GE Fanuc's Memorandum of In Opposition to Petition to Compel Arbitration was filed (the "GE Opposition Memorandum"). Since

---

[1] The court has scheduled a hearing on Otis's Petition to Compel Arbitration for February 26, 2004 at 2:00 p.m. GE Fanuc is filing this supplemental brief in response to the court's order, made during a telephonic status conference on January 2, 2004, that any supplemental briefs and supporting documentation be filed one week before the hearing.

the filing of the foregoing legal briefs, the depositions of Robert Gaboury and William S. Zitelli, key players in the formation of the contract at issue, have been taken by the parties. Relevant testimony elicited at these depositions is set forth below.

This contract dispute presents the issue of whether certain preprinted terms set forth on the back of purchase orders issued by Otis, after the formation of a contract for services between Otis and GE Fanuc, are enforceable against GE Fanuc. In support of its claim, Otis urges a passive theory of contract formation, claiming that these terms, including an arbitration provision, were part of the agreement between Otis and GE Fanuc. As set forth below, this theory is meritless as a matter of both fact and law. GE Fanuc never agreed to the terms set forth on the back side of the purchase orders, and there was no meeting of the minds concerning arbitration, indemnity, or any other preprinted terms on the reverse of the purchase orders. In addition, Otis's attempt to unilaterally bootstrap terms on GE Fanuc based on the issuance of purchase orders fails to satisfy the prerequisites for arbitration imposed by Connecticut law. As a result, Otis's petition should be denied.

As set forth in the GE Opposition Memorandum, on February 23, 2000, Otis agreed to purchase programming services from GE Fanuc in a telephone conversation between Robert Gaboury on behalf of Otis, and Robert Zitelli on behalf of GE Fanuc, wherein Otis accepted a prior written offer issued by GE Fanuc to provide such services. GE Opposition Memorandum at 2-3. Thereafter, on February 24, 2000, GE Fanuc issued a letter confirming the terms of the parties' oral contract, including the price and duration of services to be provided. Id. at 3. That same day, Otis

faxed a screen print of a purchase order regarding these programming services to GE Fanuc, which purchase order contained no contractual terms or conditions, and did not mention arbitration. Id. Hard copies of written purchase orders were subsequently issued by Otis to GE Fanuc. Id. at 3-5.

## I. THE SWORN TESTIMONY OF ROBERT GABOURY AND WILLIAM S. ZITELLI

With respect to the pre-printed, boilerplate terms set forth on the back of the Otis purchase orders, including the arbitration provision, there is no disagreement between Mr. Gaboury and Mr. Zitelli. An examination of the purchase order quickly reveals that the terms were finely printed and difficult to read.[2] Mr. Gaboury and Mr. Zitelli both agreed that the terms and conditions on the reverse of the Otis purchase order were not discussed in their conversation of February 23, 2000 or at any time thereafter. As Mr. Gaboury testified:

---

[2] During his deposition, Mr. Gaboury made reference to the Otis purchase order containing the preprinted terms and conditions on the reverse side, and testified as follows:

> A: As I mentioned before, the hard copy was going to be mailed in a few days. As you mentioned earlier, it's difficult to read, never mind faxing it. . . .

Transcript of the Deposition of Robert Gaboury dated February 11, 2004 ("Gaboury Depo."), at 86(17-19) (emphasis supplied) (attached hereto at **Exhibit A**). "[T]he cases generally agree that a party is not bound by fine print or by other conditions which would make the document or clause in question illegible." Calamari & Perillo, Contracts (3d ed. 1987), § 9-43 at 411.

Q: Do you recall ever having specifically told [Zitelli] that GE Fanuc was being asked to agree to the terms and conditions on the reverse side of the purchase order?

A: No. . . .

Gaboury Depo. at 61(6-10). Mr. Zitelli concurred that he was never asked to agree to the terms on the back side of the Otis purchase order, and stated that these terms were never brought to his attention:

Q: Can you tell me whether [R]ob Gaboury ever specifically brought to your attention the terms and conditions that are on the reverse side of the Otis purchase orders?

A: He did not.

Q: Did he ever ask you specifically to agree to those terms and conditions?

A: He did not.

Transcript of the Deposition of William S. Zitelli dated February 14, 2004 ("Zitelli Depo."), at 93(18-25) (attached hereto at **Exhibit B**). Thus, at no time did Mr. Zitelli discuss or agree to any of the "Terms or Conditions", including any provision for arbitration, terms that Otis claims are part of the parties' contract governing the Automated People Mover project at the Minneapolis/St. Paul International Airport, and that these terms were never brought to his attention. Affidavit of William S. Zitelli ("Zitelli Aff.") at ¶ 10 (attached hereto at **Exhibit C**).

More importantly, both Mr. Gaboury and Mr. Zitelli agreed that in particular, the arbitration

clause on the back of the purchase orders was never discussed, or brought to Mr. Zitelli's attention. At a number of points during his deposition, Mr. Gaboury was clear on the lack of any discussion concerning arbitration:

> Q: Do you recall speaking with [Mr. Zitelli] about any provisions relating to arbitration?
>
> A: No. I don't recall having that.

Gaboury Depo. at 65(21-23). Later in the deposition, Mr. Gaboury testified more resolutely:

> Q: You didn't specifically discuss with Bill Zitelli arbitration?
>
> A: That's one I'm pretty sure I did not.

Id. at 118(20-22). During his deposition testimony, Mr. Zitelli agreed that he never discussed arbitration with Mr. Gaboury:

> Q: Did [R]ob Gaboury ever ask you to agree to a term of arbitration?
>
> A: He did not.

Zitelli Depo. at 94(21-23).

Finally, none of the Otis purchase orders was ever signed by GE. As Mr. Gaboury testified,

> Q: Were any of the purchase orders for the Minneapolis Green Concourse APM ever signed by GE Fanuc?
>
> A: Not that I recall.

Gaboury Depo. at 62(7-10). Mr. Zitelli confirms that none of these purchase orders was ever signed by GE Fanuc.

Q: You indicated that you did not sign any of the purchase orders, correct?

A: That's correct.

Zitelli Depo. at 95(5-7); see also Zitelli Aff. at ¶ 9. An examination of the purchase orders confirms that none of them were signed by GE Fanuc. Based on the foregoing, there was no meeting of the minds concerning any of the pre-printed "Terms and Conditions" found on the reverse side of the Otis purchase orders, including arbitration, and thus no contract containing those terms was formed.

## II. ARGUMENT

"To form a valid and enforceable contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties." Lussier v. Spinnato, 69 Conn. App. 136, 140 (2002). For a sufficient offer and acceptance to occur, "each [term] must be found to have been based on an identical understanding by the parties." Id. (emphasis supplied). Under Connecticut law, additional terms, including arbitration clauses, cannot be imposed by one party after a contract is formed, by the unilateral issuance of purchase orders, or otherwise.

A unilateral attempt to impose arbitration was flatly rejected in Senco, Inc. v. Fox-Rich Textiles, Inc., 75 Conn. App. 442 (2003). In Senco, the Connecticut Appellate Court affirmed the trial court's refusal to enforce an arbitration clause. Senco involved a contract for the purchase of goods. Similar to the facts at bar, the terms of the contract in Senco were agreed to by the parties

via a telephone order, which terms were later confirmed by a letter sent by the seller, which included a description of the goods, the quantity of goods, the price, and the time for payment. Id. at 443-44. Thereafter, the seller sent to the buyer a document entitled "Sales Contract", which contained an arbitration provision. After receiving the document, the buyer paid the balance due on the order. When the goods were finally received, they did not conform to the terms of the contract, in specification and quantity. The buyer brought an action in the Superior Court seeking damages for breach of the contract, and the seller attempted to dismiss the case under the arbitration provision of the "Sales Contract". In affirming the Superior Court's denial of the motion to dismiss, the Appellate Court affirmed the trial court's conclusion that the arbitration clause "was issued after the contract was formed. Consequently, the arbitration clause was not a contract term, and therefore did not govern the dispute between the parties." Id. at 446. The Appellate Court so held despite the fact that payment was made after the issuance and receipt of the "Sales Contract". See also Avtex Fibers, Inc. v. Daily Express, Inc., 562 F.Supp. 124, 127 (D.W.Va. 1983) (the court refusing to enforce a consequential damages provision contained in a purchase order, holding that "mere acknowledgment of the receipt of the purchase order form does not constitute assent to its terms . . . .")

In this case, Otis's argument is based on its submission of purchase orders containing terms and conditions that indisputably were not discussed by the parties in negotiating and concluding a contract to provide services. Under these circumstances, there was no meeting of the minds concerning the preprinted terms on the reverse side of the purchase orders, and certainly no agreement to arbitrate. Thus, Otis has cannot sustain its burden of proving its version of the

purported contract, including the arbitration provision. Bridgeport Pipe Engineering Co. v. DeMatteo Construction Co., 159 Conn. 242, 246 (1970) (". . . the burden rest[s] on the plaintiff to prove a meeting of the minds to establish its version of the claimed contract").

Otis fails to meet its burden because the uncontroverted evidence shows there was no discussion of arbitration, let alone an agreement to arbitrate, between the Otis and GE Fanuc representatives. In addition, Otis has not produced any document signed by GE Fanuc evidencing an agreement to arbitrate. Under Connecticut Law, "arbitration agreements are to be strictly construed and such agreements should not be extended by implication." Wesleyan University v. Rissil Constr. Assoc., Inc., 1 Conn. App. 351, 355 (1984) (emphasis supplied). Of course, this is precisely what Otis is urging in this case—the imposition of an arbitration provision based not on any express agreement by GE Fanuc, but on a theory of implied agreement arising from one party's issuance of purchase orders subsequent to the formation of the contract. "Persons cannot compel arbitration of a disagreement between or among parties who have not contracted to arbitrate that disagreement among themselves." Id.; accord Sphere Drake Ltd. v. Clarendon Nat'l Ins. Co., 263 F.3d 26, 29 (2d Cir. 2001) (courts must "look first to whether the parties agreed to arbitrate a dispute, not to general policy goals") (internal quotations omitted). Otis cannot prove an agreement to arbitrate based on the subsequent issuance by one party of a document containing an arbitration clause. Senco, supra. As a result, Otis fails to maintain its burden of proving that the arbitration provision in the purchase orders formed part of the contract between it and GE Fanuc.

Finally, under Connecticut Law, "[o]nly written agreements to arbitrate are valid." Bennet

v. Meader, 208 Conn. 352, 359 (1988). Conn. Gen. Stat. § 52-408 provides that "[a]n agreement in any written contract, or in a separate writing executed by the parties to any written contract, to settle by arbitration any controversy . . . shall be valid . . . ." (emphasis added). The purchase orders were not the contract, and the parties herein agree that the purchase orders were never "executed" by GE Fanuc. Under these facts, there is no agreement to arbitrate.[3]

## III. CONCLUSION

For the foregoing reasons, and the reasons previously set forth in GE Fanuc's Opposition Memorandum dated July 25, 2003, Otis's petition should be denied.

[3] At the very least, the referenced testimony makes clear that the purported agreement to arbitrate urged by Otis is in issue. The FAA provides that a court should not order arbitration unless it is "satisfied that the making of the agreement for arbitration . . . is not in issue." 9 U.S.C. § 4. "If the making of an arbitration agreement . . . be in issue, the Court shall proceed summarily to the trial" of that issue. 9 U.S.C. § 4. The making of an arbitration agreement is in issue when a party has unequivocally denied that an agreement has been made and has produced "some evidence" to substantiate the denial. Interocean Shipping Co. v. National Shipping and Trading Corp., 462 F.25 673, 676 (2d Cir. 1976) (citing Almacenes Fernandez, S.A. v. Golodetz, 148 F.25 625, 628 (2d Cir. 1945)). As set forth above, more than "some evidence" substantiating GE Fanuc's denial exists in this case.

DEFENDANT GE FANUC AUTOMATION CORPORATION

By: ______________________________

Charles P. Reed (ct07750)
LOUGHLIN FITZGERALD
150 South Main Street
Wallingford, CT 06492
Tel: (203) 265-2035
Fax:(203) 269-3487
E-mail: creed@lflaw.com

Its Attorney

**CERTIFICATION OF SERVICE**

This is to certify that a copy of the foregoing Supplemental Memorandum was this date mailed to:

Daniel L. FitzMaurice, Esq.
Maureen O'Connor, Esq.
Day, Berry & Howard
CityPlace
Hartford, CT 06103-3499

Charles P. Reed

I:\Pierson\9125-73\supp. memo in support of objection to petition1a.wpd

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - x

OTIS ELEVATOR COMPANY :

Plaintiff

vs. Civil Action No.

3:03CV972 (JCH)

GE FANUC AUTOMATION CORPORATION :

Defendant :

- - - - - - - - - - - - - - - - - - - x

Deposition of ROBERT GABOURY, taken pursuant to FRCP 30, held at the Law Offices of Loughlin, Fitzgerald, 150 South Main Street, Wallingford, Connecticut, before Kelly L. Osterhout, a Notary Public in and for the State of Connecticut, on February 11, 2004 at 10:10 a.m.

A P P E A R A N C E S

ATTORNEY FOR THE PLAINTIFF

DAY, BERRY & HOWARD
CityPlace
Hartford, Connecticut 06103-3499
BY: Daniel FitzMaurice, Esq.
Maureen O'Connor, Esq.

ATTORNEY FOR THE PLAINTIFF

Bryan K. Pollard, Esq.
Otis Elevator Company
Ten Farm Springs Road
Farmington, Connecticut 06032-2568

ATTORNEY FOR THE DEFENDANT

LOUGHLIN, FITZGERALD
150 South Main Street
Wallingford, Connecticut 06492
BY: Charles P. Reed, Esq.

STIPULATIONS

IT IS STIPULATED AND AGREED by and between counsel for the respective parties hereto that all technicalities as to the proof of the official character of the authority of the before whom this deposition is to be taken are waived.

IT IS FURTHER STIPULATED AND AGREED by and between counsel for the respective parties hereto that all objections, except as to form, are reserved to the time of trial.

IT IS FURTHER STIPULATED AND AGREED by and between counsel for the respective parties hereto that the reading and signing of the deposition is not waived.

- - -

to the term and conditions in the purchase order?

A Yes.

Q And how did he do that?

A By providing the services and invoicing us for those services.

Q Do you recall ever having specifically told him that GE Fanuc was being asked to agree to the terms and conditions on the reverse side of the purchase order?

A No. I expected him to read the purchase order.

Q Did you advise him that he should read the terms and conditions on the back side of the purchase order as they contained important information?

MR. FITZMAURICE: Advise him verbally?

MR. REED: Verbally.

A No.

Q So it was your assumption that he would read the purchase order and acquaint himself with the terms and conditions on the back side?

A I believe that's his job.

Q And was it then further your assumption that if he took issue with any aspect of the purchase order he would bring that to your attention?

A Yes.

Q Did he at any time or did anyone from GE Fanuc ever indicate to you that they did not agree to the terms and conditions that are on the back side of the purchase order?

A No.

Q Were any of the purchase orders for the Minneapolis Green Concourse APM ever signed by GE Fanuc?

A Not that I recall.

Q Did you ever discuss any of the specific terms and conditions on the reverse side of the purchase orders with Bill Zitelli or anyone else from GE Fanuc?

A Yes.

Q And which terms and conditions that are set forth on the reverse side of the purchase orders did you discuss with Bill Zitelli or anyone from else from GE Fanuc?

A I think he mentioned some of them earlier. Termination, talked about ownership. You know, proprietary information. Talked about invoicing. Those are three that come to mind. We may have touched on others, but I recall those three.

terms and conditions are on the back of the purchase order. And when I speak of them, I speak of them because they're on the back of the purchase order, not because I like to talk about terms and conditions. So I'm having trouble making my point, I guess.

Q I understand why those issues would have been on your mind because they're on the purchase order. They're part of what you do day in, day out. I understand that. My question is when you did speak with Bill Zitelli about these provisions of termination, ownership and invoicing, did you specifically refer in the conversation to the terms and conditions?

A I don't recall.

Q Do you recall speaking with Bill Zitelli about any of other provisions that are part of the terms and conditions on the reverse side of the purchase order?

A Those three are the three that come to mind. There may have been others. I don't recall.

Q Do you recall speaking with him about any provisions related to arbitration?

A No. I don't recall having that.

Q Did you tell him that the terms and

terms and conditions on the back?

MR. REED: Correct.

MR. FITZMAURICE: You can argue that the whole thing are terms and conditions.

MR. REED: Yes.

BY MR. REED:

Q When I say terms and conditions, I'm attempting to use that as a defined reference to what's on the back side of the purchase order. Okay?

A Mm-hmm.

Q And I guess, you know, my question, if you're in the process of negotiating a contract, name of a person, you're establishing a purchase order number for use by GE Fanuc, why didn't you also send the terms and conditions that are on the purchase order for review by Mr. Zitelli?

A As I mentioned before, the hard copy was going to be mailed in a few days. As you mentioned earlier, it's difficult to read, never mind faxing it. So --

Q In what's been marked as Defendant's 6 for identification, is there any reference to terms and conditions that exist on the reverse side of the purchase order?

know.

Q But it may not have happened?

A Right.

Q You don't remember?

A No, no.

Q Do you remember the telephone conversation that is referenced in answer 2-a and 2-a through 2-f, which has to do with Mike Delana?

A Yes.

Q Tell me what you can recall of that conversation, what you said to Mr. Zitelli and what he said to you?

A Well, I'm sure I told Mr. Zitelli that our engineering manager advised me that Mike Delana was not doing a good job, and we wanted to get rid of Mike. And you know, Bill probably said something, well, can we offer you someone else who is maybe more matched to your needs. And I'm sure I said okay, and may have put him, Gil on the phone, Gil Wierschke the electrical engineering manager, to talk more specifically about skills that were required to get the job done. And then they produced Jeff Miller to replace Mike Delana, and we negotiated some kind of an agreement with some of the hours they would eat and

which is the claim that arises from the July 22, 2002 incident?

A Yes.

Q In other words, this does not reflect any agreement that POMA-Otis had with GE Fanuc; is that your testimony?

A That is correct.

(DISCUSSION HELD OFF THE RECORD.)

Q I have a couple more questions, and I think I'll be done. Did you have an agreement to arbitrate any dispute with GE Fanuc that might arise under the series of assignments that GE had on the Minneapolis Airport people mover project?

A Sounds like a really long real question. Repeat it.

MR. FITZMAURICE: Object to the form.

(THE REPORTER READ THE RECORD.)

A The contract is our agreement to arbitrate or has the language in there about arbitration.

Q You didn't specifically discuss with Bill Zitelli arbitration?

A That's one I'm pretty sure I did not.

MR. REED: I have nothing more. Thank you very much for your time coming here

A

CERTIFICATE

I HEREBY CERTIFY that I am a Notary Public in and for the State of Connecticut, duly commissioned and qualified to administer oaths.

I FURTHER CERTIFY that the deponent named in the foregoing deposition was by me duly sworn and thereupon testified as appears in the foregoing deposition, that said deposition was taken by me stenographically in the presence of counsel and transcribed by means of computer-aided transcription by the undersigned, and the foregoing is a true and accurate transcript of the testimony.

I FURTHER CERTIFY that I am neither of counsel nor attorney to either of the parties to said suit, nor of either counsel to said suit, nor related to or employed by any of the parties or counsel to said suit, nor am I interested in the outcome of said cause.

WITNESS MY HAND AND SEAL this 12TH day of February, 2003.

Kelly L. Osterhout
Notary Public

My Commission expires
December 31, 2006
License Number: 00263

I hereby certify under penalty of perjury that the foregoing is true and accurate.

______________________
ROBERT GABOURY

Subscribed and sworn to before

me this _____ day of __________, 2003.

______________________
Notary Public

My Commission Expires:

DISTRICT OF CONNECTICUT

COPY

------------------------------X
OTIS ELEVATOR COMPANY, Plaintiff, | 3:03CV972 (JCH)

VS.

G.E. FANUC AUTOMATION CORPORATION, Defendant.
------------------------------X

Deposition of WILLIAM ZITELLI, taken before Francine Rossini, LSR 00206, a Stenographer and Notary Public in and for the State of Connecticut, at the law firm of Day, Berry & Howard, CityPlace I, Hartford Connecticut, on February 14, 2004 at approximately 10:10 a.m.

Francine Rossini, LSR 00206
Brandon-Smith Reporting Service
44 Capitol Avenue
Hartford, Connecticut 06106
(860) 549-1850

b6171d21-a06c-4a58-a290-3b8ee4cecd7c

Otis Elevator vs GE Fanuc

2/14/2004 William Zitelli

Page 2

FOR THE PLAINTIFF:

DAY, BERRY & HOWARD, LLP
CityPlace I
Hartford, Connecticut 06103-3499
BY: DANIEL L. FITZMAURICE, ESQUIRE
MAUREEN O'CONNOR, ESQUIRE

FOR THE DEFENDANT:

LOUGHLIN FITZGERALD
150 South Main Street
Wallingford, Connecticut 06492
BY: CHARLES P. REED, ESQUIRE

ALSO PRESENT:

BRYAN K. POLLARD

Brandon Smith Reporting

b6171d21-a06c-4a58-a290-3b8ee4cecd7c

S T I P U L A T I O N S

It is stipulated by the attorneys for the Plaintiff and Defendant that each party reserves the right to make specific objections in open court to each and every question asked and the answers given thereto by the Deponent, WILLIAM ZITELLI, reserving the right to move to strike out where applicable, except as to such objections as are directed to the form of the question.

It is stipulated and agreed by and between counsel for the parties that the proof of the authority of the Stenographer before whom this deposition is taken is waived.

It is further stipulated that any defects in the Notice are waived.

It is further stipulated that the reading and signing of the deposition transcript by the witness is not waived.

communications.

BY MR. FITZMAURICE:

Q. Yes. Don't tell me the content if you talked to lawyer; but if you got a contact by a lawyer, I would like to know that.

A. I think that was probably the next conversation I had was -- well, actually, Bruce contacted me and indicated that a lawyer wanted to speak with me from Philadelphia, and we never did talk. And then some time went by, and then I spoke with Mr. Reed.

Q. Have you ever spoken with any lawyer for G.E., other than Mr. Reed?

A. No.

Q. Did you ever speak with Tim Shupp?

A. No.

Q. Aside from conversations you had with Mr. Reed, have you had any discussions with anyone else from General Electric about this since the conversation you had with Mr. Larkin?

A. Yes.

Q. With whom else have you spoken?

A. Fran Lavine.

Q. When did you speak with him?

A. I speak with Fran often. He is a friend. He

b6171d21-a06c-4a58-a290-3b8ee4cecd7c

is retired. I stay in touch with him.

Q. If you can tell us, what do you recall of your discussions with Mr. Lavine about the POMA-Otis/G.E. Fanuc issue?

A. I asked him for his recollection of some of the meetings that we had, you know, what did he remember from some of these things, and you know, pretty much that, you know, asked if he had been contacted by anybody.

Q. Anyone else?

A. I have spoken with Dave George.

Q. When did you speak with him?

A. Again, he is someone I stay in touch with on an occasional basis as a friend.

Q. Is he still employed by G.E.?

A. He is employed by G.E., but not at G.E. Fanuc.

Q. Do you understand that there is an issue between Otis and G.E. Fanuc as to who is responsible for all the damages of the train going off the track?

A. Yes.

Q. That is what brings us all here.

Did anyone ever ask you your views on that?

A. No.

Q. Do you have any views on that?

A. Not really. I don't know the details of what

happened.

MR. FITZMAURICE: Off the record.

(An off-the-record discussion was held.)

(Plaintiff's Exhibit 17, Work Order, was marked for identification.)

BY MR. FITZMAURICE:

Q. Exhibit 17 is a one-page document. It is an engineering services work order.

Have you ever seen the document in this form before?

A. I have never seen this form, no, or this form.

Q. Okay. All right. Well, your name is on it.

A. No.

Q. I thought I would ask about it.

(Plaintiff's Exhibit 18, February 20, 2002 E-mail, was marked for identification.)

BY MR. FITZMAURICE:

Q. Exhibit 18 is a two-page document printout of some e-mails with the time frame of February 20, 2002, starting in October of 2001.

Have you had a chance to look at Exhibit 18?

A. Yes.

Q. Is this, in fact, a printout of some e-mails?

A. Yes.

Q. Looking at the second page, the bottom of

Page 108

STATE OF CONNECTICUT

I, FRANCINE ROSSINI, a Notary Public duly commissioned and qualified in and for the State of Connecticut, do hereby certify that pursuant to Notice there came before me on February 14, 2004, the following named person, to wit: WILLIAM ZITELLI, who was duly sworn to testify to the truth and nothing but the truth; that he was thereupon carefully examined upon his oath and his examination reduced to print under my supervision; that this deposition is a true record of the testimony given by the witness.

I further certify that I am neither attorney nor counsel for, nor related to, nor employed by any of the parties to the action in which this deposition is taken, and further, that I am not a relative or employee of any attorney or counsel employed by the parties hereto, or financially interested in this action.

IN WITNESS THEREOF, I have hereunto set my hand February 15, 2004.

Francine Rossini

Francine Rossini, Notary Public
My Commission Expires 8/31/07

b6171d21-a06c-4a58-a290-3b8ee4cecd7c

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| OTIS ELEVATOR COMPANY, Plaintiff, v. GE FANUC AUTOMATION CORPORATION, Defendant. | CIVIL ACTION NO. 3:03CV972 (JCH) |
| | JANUARY 16, 2004 |

**AFFIDAVIT OF WILLIAM S. ZITELLI**

I, William S. Zitelli, being duly sworn, do hereby depose and say:

1. From August, 1998 through March, 2002, I was employed by GE Fanuc Automation Corporation ("GE Fanuc") as an Executive Account Manager.

2. I submit this affidavit in support of GE Fanuc's objection to Otis Elevator Company's Petition to Compel Arbitration.

3. In January, 2000, I held discussions with Robert Gaboury of POMA-Otis about the possibility of GE Fanuc providing technical services to Otis for its automated people mover project at the Minneapolis-St. Paul Airport.

4. Attached hereto as Exhibit A is a true and correct copy of my letter dated January 25, 2000 to Robert Gaboury of POMA-Otis containing a proposal for technical support services for

POMA-Otis.

5. On February 23, 2000, I had a telephone conversation with Robert Gaboury in which he accepted GE Fanuc's proposed terms. During my conversation with Mr. Gaboury on February 23, 2000, there was no discussion of any additional terms and conditions required by Otis, and there was no mention of arbitration, indemnification, insurance or other terms.

6. Attached hereto as Exhibit B is a true and correct copy of my letter dated February 24, 2000 to Robert Gaboury confirming the terms of the contract for GE Fanuc to provide engineering services to POMA-Otis on its automated people mover project at the Minneapolis-St. Paul airport. Exhibit B does not refer to arbitration, indemnification or insurance.

7. Attached hereto as Exhibit C is a true and correct copy of a three-page fax from Robert Gaboury to me which contains a "screen print" of the Otis purchase order for the work to be performed in accordance with the agreement reflected in Exhibit B. Exhibit C does not contain any terms and conditions of Otis, nor does it refer to arbitration, indemnification, insurance or any other additional terms.

8. Mr. Gaboury sent me a screen print of the purchase order because he did not have GE Fanuc set up as a vendor in the Poma-Otis system. He could not send a paper purchase order at that time. This is why I asked Lise to enter the order via my note on the document: "Lise, can you use this to enter the PO for POMA-Otis. The PO # is K03346. Thx. [signed] Bill Zitelli. 265-1872", using the screen print.

9. GE Fanuc began work on February 28, 2000. After GE Fanuc began performing under the parties' oral contract, Otis sent a purchase order, a copy of which is attached hereto as Exhibit D, stating: "confirming order to: Bill Zatelli [sic] on February 23, 2000." Neither the foregoing purchase order, nor any subsequent purchase orders issued by Otis in connection with the automated people mover project at the Minneapolis-St. Paul airport, was ever signed by GE Fanuc.

10. At no time did I ever discuss with anyone from POMA-Otis terms concerning arbitration, indemnification, insurance, or any terms other than those that were orally agreed to by Rob Gaboury and me, and memorialized in the letter attached hereto as Exhibit B. At not time were terms concerning arbitration, indemnification, insurance, or terms other than those that were orally agreed to by Rob Gaboury and me, and memorialized in the letter attached hereto as Exhibit B, ever brought to my attention by anyone from POMA-Otis. At no time did I ever agree to any terms concerning arbitration, indemnification, insurance, or terms other than those that were orally agreed to by Rob Gaboury and me, and memorialized in the letter attached hereto as Exhibit B.

11. The above is true and correct to the best of my knowledge and belief.

William S. Zitelli

Subscribed and sworn to me this 16 day of JANUARY, 2004.

Notary Public

Notarial Seal
Linda K. Small, Notary Public
Franklin Park Boro, Allegheny County
My Commission Expires Apr. 16, 2007
Member, Pennsylvania Association Of Notaries

Notarial Seal
Linda K. Small, Notary Public
Franklin Park Boro, Allegheny County
My Commission Expires Apr. 16, 2007
Member, Pennsylvania Association Of Notaries

TOTAL P.04

GE FANUC

GE Fanuc Automation

William S Zitelli, Executive Account Manager
E-mail: bill.zitelli@cho.ge.com
Phone: 412-220-1872; Fax: 412-220-1870

GE Fanuc Automation North America, Inc.
1370 Washington Pike
Bridgeville, PA 15017
Call 1-800-GE FANUC visit: www.gefanuc.com

1/25/00

Robert Gaboury
POMA-Otis
4 Farm Springs
Farmington, CT 06032

Subject: Engineering Support

Dear Rob:

As a follow-up to the discussion we had regarding GE Fanuc providing technical support for POMA-Otis to help test logic and screens for your people mover applications I have been able to arrange the following discounted proposal to help reduce the costs to POMA-Otis. GE Fanuc is willing to provide an Engineering Services engineer at no cost for 4 weeks if POMA-Otis commits to purchasing a minimum of 8 additional during the year 2000, effectively giving you a 33% on our service rate. This individual would be an experienced engineer that could help with logic development, CIMPLICITY development, and on-site start-up and troubleshooting. Depending on the needs you have we may be able to assign an engineer with drive and power experience as well.

Rob, we will try to assign a local engineer from the Connecticut area, but we do ask that POMA-Otis be responsible for travel and living expenses if this individual is to travel to the job site or meetings with vendors etc. This T&L will be billed at cost plus 10%.

While your original goal was to have us assign a trainee to help you with testing, we have none available at this time that could make a contribution to your project.

Thank you for your consideration.

Sincerely,

William S. Zitelli
Executive Account Manager

C: Fran Lavine
C: Dave George

GE FANUC

GE Fanuc Automation

William S Zitelli, Executive Account Manager
E-mail: bill.zitelli@cho.ge.com
Phone: 412-220-1872; Fax: 412-220-1870

GE Fanuc Automation North America, Inc.
1370 Washington Pike
Bridgeville, PA 15017
**Call 1-800-GE FANUC visit: www.gefanuc.com**

February 24, 2000

Robert Gaboury
Manager, Sourcing/Supplier Development
Poma-Otis
Four Farm Spring Road
Farmington, CT. 06032

Subject: PO # K03346

Dear Rob,

Thank you for purchasing GE Fanuc's engineering services for your people mover applications. Mike Delana will begin work on Monday, February 28th and will continue working for 12 weeks. To simplify the billing of our special price offer, we will bill Poma-Otis for Mike's time at a straight time rate of $76.67/hour for 8 hour days on week days. Weekends, holidays and overtime will be billed at a discounted rate of $115/hour (normal rate is $172.00). Since Mike is located in the Connecticut area, no T&L d for Mike to work at your facility. In the evnt that you require Mike to travel to a job site, vendor, or other location Mike's T&L will be billed at actual cost plus 10% per our original quotation. Our Federal Tax ID # is 54-139-3332. Please fax you purchase order to me before Monday so we can have it in place when Mike starts on Monday. We are looking forward to working closer with POMA-Otis on its projects. I hope this clarifies our conversation. Thank you.

Sincerely,

William S. Zitelli
Executive Account Manager

C: Fran Lavine
C: Dave George
C: Lise Willingham

ac

POMA-OTIS
TRANSPORTATION SYSTEMS

**Poma-Otis Transportation Systems**
Four Farm Springs
Farmington, CT 06032, USA
TEL: (860) 676-5318
FAX: (860) 676-6687

| DATE: February 24, 2000 | FAX #: | PAGE 1 of 3 |
|---|---|---|
| TO: Bill Zitelli | COPY: | |
| FROM: Robert Gaboury | PHONE NUMBER: 860-676-6813 | |
| RE: PO# KO3346 | REFERENCE: | |

Hi Bill,

Attached is a screen print of the subject purchase order. As I mentioned on the phone yesterday, it takes about three days to process a supplier add and therefore GE Fanuc does not appear in the header of this screen print. I hope this copy will do until I can add you as a supplier in the system. According to Gil, no overtime will be necessary. He just mentioned to Mike that his team is working 10 hour days.

On the ATS Request for Quote, when do you think you can provide your proposal? Please advise.

Thanks for all your help.

Best regards,

Rob Gaboury

LISE,
CAN YOU USE THIS TO ENTER THE PO FOR PO # THE POMA-OTIS. THE IS KO3346.
Thx
Bill Zitelli
265-1872

CC

(A) Passport - PASSPORT February 24, 2000, 17:03:34

MCPR1102 OTIS PURCHASING SYSTEM 02/24/00 1704
INQPOHDR P.O. HEADER INQUIRY UBVU

ORDER NBR: KO.003346 CLASS: P HDR STATUS: I PLANT CODE: HDQ
VENDOR ID: VEND NAME:
COPIED FROM: PO ADDR ID: A
ENTRY DATE: 022300 PART TYPE: N COMMODITY:
DOCK DATE: 051900 PREPAID/COLLECT: 3 TRANSPORT TYPE:
TAX CODE: N MASTER/BLANKET:
BILL TO BUS ID: HDQ0000001 ADDR ID: AP PO AWARD CODE: E
SHIP TO BUS ID: HDQ0000001 ADDR ID: 4 PO REASON CODE:
REQUESTOR: WIERSCHK APPROVER: UBVU CONFIRMED ON: 022300
BUYER: UBVU EXPEDITOR: WITH: BILL ZATELLI

CONTRACT: PREFIX NUMBER 607936 COST CLASS T X/WRTY
ACCOUNT: MWR 0250011000 CMN HEADER TEXT: P N D N
PROJECT: MORE TEXT: N
TEXT:

NEXT RESPONSE : INQPOHDR NEXT KEY :

CLEAR: EXIT PF2: INQPOITM PF11: HELP

CC

(A) Passport - PASSPORT February 24, 2000, 17:03:43

```
MCPR1082    OTIS PURCHASING SYSTEM                          02/24/00   1704
INQPOITM                        P.O. LINE INQUIRY             UBVU

 ORDER NBR: KO.003346     LINE: 001    CLASS: P  HDR STATUS: I PLANT CODE: HDQ
 VENDOR ID:               VENDOR NAME:
 DESC/PART: PROGRAMMING SERVICES              PART TYPE: N      LINE STATUS: I
      DESC: PROGRAMMING SERVICES              COMMODITY:
STOCK DATE: 051900 DOCK DT: 051900
 PURCH UOM: HR
     ORDER QTY:       480.000
UNIT PRC T/F/S:         76.6700  /     /     / M REPRICE: N
TOTAL LINE AMT:          36801.60

CONTRACT: PREFIX       NUMBER 607936    COST CLASS T      X/WRTY
 ACCOUNT:   MWR  0250011000  CMN
 PROJECT:
MULTIPLES: CONT 1  ACCT 1                    TEXT: P N  D N    MORE TEXT: N
TEXT:

NEXT RESPONSE : INQPOITM   NEXT KEY :
DC744075 W: NO VENDOR ON PO              *
CLEAR: EXIT        PF1: INQPOHDR   PF5: INQACTPO  PF11: HELP
```

LISE

** TOTAL PAGE.03 **