UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OTIS ELEVATOR COMPANY | : | |
| Plaintiff | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3-03-cv-972 (JCH) |
| | : | |
| GE FANUC AUTOMATION CORP. | : | JUNE 1, 2004 |
| Defendant | : | |

**AMENDED RULING RE:**
**PETITION TO COMPEL ARBITRATION [DKT. NO. 1]**

The plaintiff, Otis Elevator Company ("Otis"), brings this Petition to Compel Arbitration against GE Fanuc Automation Corp. ("GE Fanuc"). A "mirror" action was filed by GE Fanuc in the District Court for the District of Minnesota, but was subsequently transferred by that court to this district. GE Fanuc Automation v. POMA-Otis, et al, Civil Action No.: 3-03-cv-1321 (JCH).

Otis is a corporation organized under the laws of the State of New Jersey with its principal place of business in Connecticut. GE Fanuc is a corporation organized under the laws of the State of Delaware with its principal place of business in the Commonwealth of Virginia. The court thus has diversity jurisdiction under 28 U.S.C. § 1332 because this is an action between citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

I.  BACKGROUND

The facts do not appear to be in significant dispute.  This Petition arises out of a business relationship between Otis and GE Fanuc, which began in 1999.  At that time, Otis entered into a contract with the Metropolitan Airport Commission to build an automated people mover at the Metropolitan/St. Paul International Airport.  After entering into that contract, Otis contacted GE Fanuc to see if the latter could provide technical support to Otis for programming work on the people mover system.  As a follow up to that discussion, GE Fanuc's representative, William Zitelli, wrote to Robert Gaboury at Otis with GE Fanuc's proposal on January 25, 2000.  Subsequent to that letter, Gaboury and Zitelli spoke on the telephone on February 23, 2000.

Following this phone conversation, Zitelli wrote to Otis thanking it for "purchasing GE Fanuc's engineering services."  The letter detailed the basics of a contractual relationship, including hourly rate and tax identification number.  It also stated:  "Please fax you [sic] purchase order to me before Monday so we can have it in place when Mike starts on Monday."  GE Fanuc's Response to Otis' Petition [Dkt. No. 14], Exhibit B.  The purchase order was printed by Otis on February 29, 2000, and received by GE Fanuc in early March of 2000.  On the back side of the purchase order, there were terms and conditions, including an agreement to arbitrate provision.  The front of the purchase order has, in printed large-sized text at the bottom, "Terms and Conditions on Back," and also

has stamped about two-thirds of the way down the page over the terms of the purchase order, "Terms and Conditions on Back."

As the work continued, further purchase orders were issued, each of them containing the legends on the front referencing terms and conditions on the back, and an arbitration provision on the back. Each of the purchase orders contained the following: "Confirming order to: Bill Zitelli on 02/23/00." The last purchase order covers the period through June 30, 2002. None of the purchase orders were signed by GE Fanuc.

The accident which is the subject of this Petition occurred on July 22, 2002, a date on which GE Fanuc was providing engineering services for Otis.

## II.    DISCUSSION

The Federal Arbitration Act evinces a "strong federal policy favoring arbitration as an alternative means of dispute resolution." Chelsea Square Textiles, Inc. v. Bombay Dying and Manufacturing Co., Ltd., 189 F.3d 289, 294 (2d Cir. 1999) (quoting Oldroyd v. Elmira Savings Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998)). The Act provides that written arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1999); see also Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela, 991 F. 2d 42, 45-46 (2d Cir. 1993).

In this proceeding, the parties do not dispute that, if the arbitration agreement is valid, the scope of such agreement would encompass the dispute as described in both Otis' Petition and GE Fanuc's Complaint. Therefore, the question is whether there is a valid and enforceable agreement to arbitrate.

In determining whether parties to a contract have agreed to arbitrate, the court must look to general state law contract principles. Chelsea Square, 189 F.3d at 296. The parties are in agreement that Connecticut law governs the interpretation of their agreement which is at issue in this case. Thus, the court applies Connecticut law in determining whether Otis and GE Fanuc have agreed to arbitrate.

Under Connecticut law, the inquiry must focus on whether both parties to the contract evidence an intent to be bound by that agreement. Hoffman v. Fidelity & Cas. Co., 125 Conn. 440, 443-44 (1939). This intent may be implied from the parties' conduct. Gvozdenovic v. United Airlines, Inc., 933 F.2d 1100, 1105 (2d Cir. 1991). In this case, GE Fanuc argues that the agreement, or contract, to perform its services was formed orally on February 23, 2000, as a result of a telephone conference. Further, GE Fanuc argues that, in that telephone call, there was no discussion of, let alone agreement to, being bound to arbitrate any disputes. Thus, it argues there was no "meeting of the mind" on this term of the contract. Bridgeport Pipe Engineering Co. v. DeMatteo Constr. Co., 159 Conn. 242, 246 (1970). It further argues that the attempt by Otis to add an arbitration provision,

by way of an unsigned purchase order submitted subsequent to this telephone conversation, must fail.

The undisputed record before this court reveals the fact that, after the phone conversation of February 23, 2000, GE Fanuc's representative, Mr. Zitelli, wrote to Mr. Gaboury of Otis. In that letter, Mr. Zitelli requests that a purchase order be faxed to him and in place when GE Fanuc's employee begins work. It is clear, therefore, that the parties contemplated that Otis' purchase order would be a part of any agreement or contract regarding these services.

It is further undisputed that, subsequent to the letter of February 24, 2000, Mr. Gaboury, on behalf of Otis, faxed a part of Otis' form purchase order to Mr. Zitelli (a "screen print"). In sending this screen print, Mr. Gaboury indicated that it took time to process the purchase order and he would forward it along in approximately 3 days. Subsequently, on February 29, 2000, Otis prepared and sent to GE Fanuc the first purchase order involving this project and these parties. It is this purchase order which contains the arbitration terms on the back.

This court concludes that the terms of the agreement between these parties concerning the project of the people mover at the Minneapolis/St. Paul International Airport is contained in the telephone conversation, the confirming letter, and the purchase order. Clearly the parties contemplated that there would be a purchase order issued, which

purchase order would govern the work. Thus, all of the terms of this agreement were not in place until the purchase order was issued.

The fact that the purchase order is not signed by GE Fanuc does not prevent the enforcement of the arbitration agreement. See Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987). Further, the fact that the arbitration terms appear on the back of the purchase order does not relieve GE Fanuc from its obligation to arbitrate disputes. See Pervel Indus. Inc. v. T.M. Wallcovering, Inc., 871 F.2d 7, 8 (2d Cir. 1989) (finding that an arbitration agreement appearing on the reverse side of the printed confirmation was binding on the parties). "The front of each Confirmation plainly informed the textile buyer that any sale would be governed by the terms and conditions printed on the reverse side." Chelsea Square, at 189 F.3d at 296. As in the Chelsea Square case, the purchase orders in this case bear two legends in the front, in large print, notifying the reader: "terms and conditions on back." GE Fanuc is a sophisticated party. It never objected to the purchase order or any of the terms and conditions on the back, including the arbitration clause. See Infinity Indus., Inc. v. Rexall Sundown, Inc., 71 F. Supp. 2d 168, 171-72 (E.D.N.Y. 1999).

GE Fanuc seems to suggest that because it did not read and sign the purchase order, it cannot alter or add to the fundamental agreement it had formed with Otis on February 23, 2000. It does not appear that the defendant disputes the proposition that, had GE

Fanuc read and signed the purchase order, it would be bound.  The case law is equally clear that, if its representative had signed the purchase order, even if he had not read the terms on the back, GE Fanuc would be bound.  T & R Enters., Inc. v. Continental Grain, Co., 613 F.2d 1272, 1278 (5th Cir. 1980).

In this case, it appears that the person responsible at GE Fanuc received the purchase orders and did not read them.  He merely placed them in a drawer.  However, the intent of the parties to an agreement may be implied from a party's conduct.  Gvozdenovic, 933 F.2d at 1105; see also Stedor Enters., Ltd. v. Armtex, Inc., 947 F.2d 727, 733 (4th Cir. 1991) (finding a binding arbitration agreement where, over a six-month period, party had received several written confirmations of purchase orders, each of which indicated the presence of an arbitration agreement, but the purchaser "never looked at those forms but 'simply tossed them in the file'").

GE Fanuc relies heavily on the case of Senco, Inc. v. Fox-Rich Textiles, Inc., 75 Conn. App. 442, cert. denied, 263 Conn. 916 (2003).  In Senco, the Connecticut Appellate Court affirmed the trial court's refusal to enforce an arbitration clause in a contract for the purchase of goods.  Id. at 443.  The court there found that the contract was agreed to by the parties via telephone with terms later confirmed by a letter sent by the seller.  Id. at 443-44.  Thereafter, the seller sent to the defendant a document entitled "Sales Contract," which contained an arbitration provision.  Id. at 444.  The Appellate Court affirmed the Superior

Court's denial of a motion to dismiss, holding that the arbitration clause was issued after the contract was formed. Id. at 446. Consequently, the arbitration clause was not a contract term and, therefore, did not govern the dispute between the parties. Id.

In the instant case, as in the Senco case, the telephone conversation was followed by a letter. However, unlike the Senco case, the letter in this case specifically referenced the fact that a purchase order must issue as part of this agreement. Thus, until the purchase order issued and was accepted by the other side, either by affirmance or by silence coupled with performance under the contract, the contract in this case was not finally formed.

In addition, Otis issued not one purchase order, but a series of them over several years covering continued work on this project. Each of those purchase orders contained an arbitration clause. As in the Stedor case cited above, Otis had an established course of dealing with GE Fanuc that began in February of 2000, and continued into mid-2002, with multiple purchase orders issued over the course of that dealing. See 947 F.2d at 733. In each of those purchase orders, clearly and explicitly indicated terms were on the back of the purchase order which terms included the arbitration clause. See id.

The final argument made by GE Fanuc to avoid arbitration is that the incident giving rise to the dispute between the parties occurred in July of 2002 and the last purchase order expired in June of 2002. Thus, GE Fanuc argues that no purchase order covers the work involved in the dispute in question, and thus there is no agreement to arbitrate even

under the court's analysis above.

The last purchase order in place, Purchase Order KO.003346 was issued on December 7 and received by the defendant in advance of the purchase order's effective date of January 2, 2002. On the face of the purchase order, it reflects under caption "Other important information covering this item" the following: "1/2/02 - 6/30/02." In addition, it indicates a due date for the temporary engineering labor described in the purchase order of 06/30/02. Based on this, GE Fanuc argues that this purchase order covered work only up through June 30, 2002, and thus the events of July 22, 2002, which give rise to the dispute between the parties, is not covered by this or any other purchase order, and thus is not subject to the arbitration clause on the back of the purchase order.

However, GE Fanuc overlooks another aspect of the purchase order which appears above the description of the "product" (temporary engineering labor) and the due date (6/30/02), and that is the following: "other important information covering this entire order: <u>estimated</u> service length contract." (emphasis added). By its very terms and on the face of the purchase order, the parties contemplated that the work would not be necessarily performed within the strict confines of the terms of the purchase order (January 2, 2002 through June 30, 2002), but may go longer or shorter ("estimated"). Given the length of this purchase order, let alone the length of Otis' work on the project, 22 additional days is within the "estimated" contract period.

**CONCLUSION**

For the foregoing reasons, the court grants Otis' Petition to Compel Arbitration. The parties are directed to confer and advise the court by June 15, 2004, if any party objects to the case closing with the right to reopen upon completion of the arbitration process, and what action the court should take in the GE Fanuc action in light of this opinion.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 1st day of June, 2004.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge